In assessing the testimony of expert medical witnesses and issues, "the Commission, like any other trier of facts, is the sole judge of the credibility of the witnesses, and of the weight to be given to their testimony. [Cites omitted.] This being true, it may accept or reject the testimony of a witness, either in whole or in part, depending solely upon whether it believes or disbelieves the same."Anderson v. Northwestern Motor Co., 233 N.C. 372, 376,64 S.E.2d 265(1951). In this case, the Deputy Commissioner had ample evidence and reasonable grounds to believe that the plaintiff was capable of returning to gainful employment fifteen months after sustaining a back strain that, with appropriate exercise, might be expected to clear up in a few weeks (see Dr. Mihelic's patient notes of 6/15/94, and Depo. of Dr. Lassiter, pps. 10-12, and 36), whether or not her physicians did. By that point, they were finding no objective basis for her continued complaints of pain, but continued to act on them out of willingness to give her "the benefit of [the] doubt", in one case, and perhaps some irritation at the defendant in the other. (See Depo. of Dr. Lassiter, pps. 12-13, and Exhibit, p. 3; Depo. of Mihelic, pps. 51-52.) With due deference to the Deputy Commissioner's firsthand evaluation of the plaintiff's testimony, and in light of objective medical evidence, the award should be affirmed.
Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, with the exception of minor modifications, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner as follows:
The following were entered into by the parties at the hearing before the Deputy Commissioner as
STIPULATIONS
In addition to the stipulations contained in the aforementioned Pre-Trial Agreement, the parties furthermore stipulated as follows:
1. Defendant paid plaintiff temporary total disability compensation benefits at the weekly rate of $466.00 from February 17, 1994 through April 11, 1994, and from May 17, 1994 through May 23, 1994. During these two periods, plaintiff also received salary continuation by which she was paid the difference between her compensation rate and her salary;
2. Plaintiff did not receive wages or worker's compensation benefits from June 11, 1994 through July 31, 1994;
3. Plaintiff has neither worked nor received any wages in any employment, nor has she received worker's compensation benefits from October 23, 1994 through the present time;
4. Medical records were stipulated into evidence consisting of medical records of plaintiff's treatment and evaluation by Dr. Bernstein, a radiology report from Mercy Hospital dated February 23, 1994, medical records and reports of Dr. Mihelic, records of physical therapy rendered to plaintiff at Hilton Head Hospital in July of 1994, an MRI report from Hilton Head Hospital of May 18, 1994, medical records of plaintiff's treatment by Dr. Lassiter, and a radiology report of an MRI performed at Mercy Hospital on May 12, 1995.
* * * * * * * *
Based upon all of the competent evidence adduced at the hearing, the Full Commission makes the following
FINDINGS OF FACT
1. Plaintiff is a forty-one year old married female with three children, and at the time of the injury giving rise hereto had been employed by defendant as a Flight Attendant for approximately fourteen years.
2. On January 28, 1994, plaintiff sustained an admittedly compensable injury to her back when she slipped and fell.
3. Following said injury, plaintiff was referred to Dr. Bernstein by defendant for treatment of her back condition. Following his evaluation, Dr. Bernstein diagnosed plaintiff's condition as lumbosacral strain and recommended conservative treatment consisting of physical therapy. By April 12, 1994, Dr. Bernstein noted that this lumbosacral strain had essentially resolved and released plaintiff to return to working fifty hours per month. When re-seen on May 3, 1994, plaintiff complained of some slightly increased discomfort in the lower neck and mid back area; therefore, she was restarted on physical therapy three times per week for two weeks and continued to be placed on fifty hours a month work status. When re-seen on May 17, 1994, however, due to plaintiff's continuing subjective complaints of back pain, although examination remained unremarkable, plaintiff was referred for MRI evaluation which was conducted on May 18, 1994. MRI evaluation was unremarkable other than indicating a pre-existing problem of scoliosis of the lumbar spine and degenerative disk disease at the L1-2, L4-5, and L5-S1 levels. When re-seen by Dr. Bernstein on May 24, 1994, in light of the length of time since plaintiff's injury (approximately five months), Dr. Bernstein opined that plaintiff's continued subjective complaints of back pain were unrelated to her original lumbosacral strain and released her to resume her regular work activities for defendant, or in the alternative to seek additional treatment from her family physician.
4. On June 15, 1994, plaintiff sought additional medical treatment from Dr. Mihelic, an orthopedic surgeon, who following his evaluation diagnosed plaintiff's condition as an unrehabilitated back sprain, resulting from the admittedly compensable injury giving rise hereto, and opined that plaintiff would undergo a full recovery without residual disability within three to six weeks.
5. On July 26, 1994, plaintiff requested that Dr. Mihelic release her to return to work at a reduced schedule of fifty hours per month and accordingly, plaintiff was released to return to work at the reduced fifty hours per month schedule without additional physical restrictions.
6. However, plaintiff learned that she did not have the option of returning to work for defendant at her reduced work schedule because of Dr. Bernstein's opinion that plaintiff's continuing complaints of back pain were unrelated to her compensable injury; therefore, per plaintiff's request, Dr. Mihelic released her to return to full-time work activities.
7. On August 1, 1994, plaintiff returned to unrestricted, full duty employment with defendant. However, following her return to work on August 1, 1994, on September 21, 1994, plaintiff sought additional treatment from Dr. Mihelic for recurrent symptoms of low back pain which she related to a return to full-time work activities. Examination at that time revealed muscle tightness and tenderness. Dr. Mihelic recommended that plaintiff undergo a back stabilization and work hardening program, and further excused plaintiff from work activities at that time due to her increased complaints.
8. On September 26, 1994, eight months after the injury of January 28, 1994, plaintiff was examined by Dr. Lassiter, a neurosurgeon, whose examination revealed that plaintiff possessed a full range of back motion, and also that neurological examination was unremarkable and straight leg raising was negative bilaterally. At plaintiff's request, Dr. Lassiter restricted her to performing her regular work duties on a limited basis working fifty hours per month; however, he further opined that plaintiff would be able to return to full-time work in the near future. Dr. Lassiter did not recommend further physical therapy, work hardening, or a back stabilization program. As soft tissue injuries like that sustained by plaintiff usually resolve within eight weeks after the initial trauma, and if physical therapy is recommended, it is usually appropriate within the acute period following the injury.
9. When re-seen by Dr. Mihelic on October 18, 1994, plaintiff was again released to return to limited work duties; however, defendant did not have light duty employment of fifty hours per month available for plaintiff; therefore, plaintiff last worked with defendant on October 23, 1994 when defendant placed plaintiff on medical leave without pay.
10. Per Dr. Mihelic's recommendation, plaintiff participated in a work hardening program beginning in April 1995; however, in late April or early May of 1995, plaintiff ceased participation in this work hardening program, although plaintiff was aware that her health insurance would continue to pay for such treatment through June 9, 1995.
11. Plaintiff was re-examined by Dr. Lassiter on May 12, 1995. Her objective examination was "quite normal" at that time, and she had no "diagnosable condition beyond her pain complaints." Plaintiff had fully recovered from her compensable injury, having reached maximum medical improvement with no permanent disability as a result of said injury.
12. On May 16, 1995, plaintiff was seen by Dr. Mihelic who, although he continued to recommend that plaintiff initially return to work on a fifty hour per month basis and undergo a back stabilization and work hardening program, performed an examination which revealed no physical problems "from a physical exam point of view" which would prevent plaintiff from returning to her full-time regular work duties with defendant, which would require her to work approximately eighty to eighty-two hours per month.
13. As of May 12, 1995, plaintiff had reached maximum medical improvement, had sustained no permanent disability as a result of her admittedly compensable injury, and was capable of resuming her full-time employment with defendant.
14. In light of the opinions of both Drs. Mihelic and Lassiter that plaintiff had no objectively determinable physical problems which would prevent her from returning her to her regular work duties in May, 1994, the nature of her injury and the healing period that had since elapsed, the fact that plaintiff voluntarily ceased participation in a physical therapy program in the Spring of 1995 which was being paid for through her insurance carrier, and the first hand evaluation of the plaintiff's testimony by the Deputy Commissioner, the undersigned finds that additional physical therapy consisting of work hardening or a back stabilization program would not be of further benefit to plaintiff at the time of the hearing before the Deputy Commissioner.
15. The medical evidence of record reveals that plaintiff's complaints of back pain after release by Dr. Bernstein in May, 1994 were related to the admittedly compensable injury, and defendant did not provide plaintiff with appropriate medical treatment after May 1994, except for the examinations by Dr. Lassiter. The treatment rendered to plaintiff by Dr. Mihelic was reasonable and tended to effect a cure, give relief, and lessen plaintiff's disability. Consequently, plaintiff's motion to approve the treatment of Dr. Mihelic, which was brought within a reasonable time, may be granted.
* * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following
CONCLUSIONS OF LAW
1. As a result of the injury by accident giving rise hereto, plaintiff was temporarily and totally disabled for the periods May 24, 1994 to August 1, 1994, and from October 24, 1994 through May 11, 1995, and is entitled to receive additional temporary total disability compensation benefits at the rate of $466.00 per week during said periods. N.C. Gen. Stat. § 97-29.
2. As a result of the injury by accident giving rise hereto, plaintiff was temporarily partially disabled from August 1, 1994 through October 23, 1994, and is entitled to compensation benefits equal to sixty-six and two thirds of the difference between her average weekly wages prior to her injury ($763.94) and the average weekly wage which she was able to earn from August 1 through October 23, 1994. N.C. Gen. Stat. § 97-30.
3. Plaintiff is entitled payment by defendant for all medical compensation reasonably necessary as a result of the subject injury by accident, to the extent said treatment tends to effect a cure, give relief, or lessen plaintiff's disability, including that rendered by Dr. Mihelic prior to the hearing before the Deputy Commissioner. N.C. Gen. Stat. §§ 97-25; 97-2(19).
* * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1. Defendant shall pay temporary total disability compensation benefits to plaintiff at the rate of $466.00 per week for the periods May 24, 1994 through July 31, 1994, and October 24, 1994 until May 12, 1995. Said amount shall be paid in a lump sum subject to the attorney's fee hereinafter approved.
2. Defendant shall pay temporary partial disability compensation benefits to plaintiff at the rate of two-thirds of the difference between her average weekly wages at the time of the injury ($763.94), and the average weekly wages which she was able to earn for the period commencing August 1, 1994, and continuing through October 23, 1994. Said amount has accrued and shall be paid in a lump sum subject to the attorney's fee hereinafter approved.
3. Defendant shall pay all medical compensation expenses incurred by plaintiff as a result of the injury giving rise hereto when the bills have been submitted to defendant's claims administrator and approved in accordance with the rules of the Commission.
4. A reasonable attorney's fee in the amount of twenty-five percent of the compensation due plaintiff is hereby approved for plaintiff's counsel. Said fee shall be deducted from the amount due plaintiff and paid directly to plaintiff's counsel.
5. Defendant shall pay an expert witness in the amount of $150.00 to Dr. Bernstein.
6. Defendant shall pay the costs due this Commission.
 S/ ________________________ J. RANDOLPH WARD COMMISSIONER
CONCURRING:
S/ _____________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ _____________________ BERNADINE S. BALLANCE COMMISSIONER
JRW:md 4/22/97